******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

U.S. BANK NATIONAL ASSOCIATION, TRUSTEE *v.*
GLYNNIS SORRENTINO ET AL.
(AC 36462)

Alvord, Prescott and Pellegrino, Js.

*Argued February 11—officially released June 23, 2015*

(Appeal from Superior Court, judicial district of
Middlesex, Aurigemma, J.)

*Hugh D. Hughes*, with whom, on the brief, was *John
J. Carta*, *Jr.*, for the appellants (defendants).

*Geraldine A. Cheverko*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. In this mortgage foreclosure action, the defendants, Glynnis Sorrentino and Gallery at 85 Main, LLC, appeal from the summary judgment on their counterclaims rendered in favor of the plaintiff, U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-CH1, Asset Backed Pass-Through Certificates, Series 2006-CH1.[1] The defendants claim that the court improperly granted the plaintiff's motion for summary judgment with respect to four of their five counterclaims because the affidavit and other evidence submitted in support of the motion for summary judgment failed to address the factual allegations underlying those counterclaims and, thus, did not demonstrate a lack of a genuine issue of material fact.[2] The plaintiff argues on appeal, however, that the factual allegations in the counterclaims relate to activities that postdate the origination of the loan, the defendant's default and the plaintiff's commencement of this foreclosure action, and that, because they do not relate to the making, validity or enforcement of the mortgage, they fail as a matter of law. We agree with the plaintiff and, accordingly, affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. In February, 2006, Sorrentino executed a note in favor of Chase Bank USA, N.A., in the principle amount of $380,000. At the same time, to secure that note, Sorrentino executed a mortgage in favor of Chase Bank USA, N.A., on property located at 85 Main Street in Essex. In April, 2007, Sorrentino, by way of a quit claim deed, transferred her interest in the 85 Main Street property to Gallery at 85 Main, LLC, a limited liability company with Sorrentino as its sole member.

In June, 2009, the plaintiff filed the present action, alleging that the note was in default and seeking to foreclose the mortgage.[3] On October 12, 2010, the court referred the parties to the foreclosure mediation program. See General Statutes §§ 49-31*l* through 49-31o. On May 3, 2012, the foreclosure mediator issued a final report indicating that the parties were unable to reach any agreement and referring the matter back to the court. The defendants filed an answer to the foreclosure complaint on May 28, 2013, which included eleven special defenses and five counterclaims.

Counterclaims one, two, four, and five, which sounded respectively in equitable estoppel, breach of the covenant of good faith and fair dealing, unclean hands, and fraud, were all premised on a common set of factual allegations that alleged improper conduct by the plaintiff during the foreclosure mediation proceedings. Specifically, each of those four counterclaims incorporated by reference the following eight paragraphs:

"1. Subsequent to the filing of the instant action, plaintiff and defendants engaged in a court annexed mediation program.

"2. Pursuant to the mediation process, defendants provided to plaintiff, on a regular basis, each and every document requested by plaintiff.

"3. The plaintiff conducted the mediation process in a manner calculated effectively to ensure that the subject loan would not qualify for modification. During this process, plaintiff continually requested documents which had already been provided; regularly claimed to have lost or misplaced documents; professed to not understand the sources and amounts of income despite repeated, good faith, efforts on the part of defendants to provide this information to plaintiff. Plaintiff, on a regular basis, assured defendants that . . . they would qualify for a modification, and that 'we want you to stay in your home and keep your home' when, in fact, plaintiff knew that the chances for a modification were negligible.

"4. Plaintiff, either intentionally or negligently, delayed the mediation process, which resulted in the defendants accruing an exorbitant reinstatement arrearage, which made it impossible for defendants to even consider reinstating the loan with a lump sum payment.

"5. Plaintiff either negligently or intentionally strung this process along for over one year thereby rendering the possibilities of a modification nonexistent and the entire process a sham.

"6. Plaintiff explicitly and/or implicitly made certain representations to defendants upon which defendants relied; plaintiff knew or should have known that it was not prepared to offer a loan modification, but, nevertheless, continued to string defendants along, either expressly or impliedly representing that defendants would be eligible for a loan modification.

"7. At no point during the loan mediation process [were] defendant[s] advised that [they] would not qualify for a modification until [they were] so advised at the last mediation session.

"8. The undersigned was repeatedly assured by representatives of the plaintiff that all the documents were appropriately submitted and, in [their] opinion, this loan was eligible for modification; this occurred repeatedly during the mediation process leading defendants to believe that a loan modification was imminent."

Counterclaim three, which, as previously discussed in footnote 2 of this opinion, alleged a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., relied on an entirely distinct set of factual allegations. Rather than incorporating the previously quoted paragraphs, the CUTPA

counterclaim alleged as follows: "The plaintiff failed to provide the defendants with a copy of their mortgage and loan in this transaction. The plaintiff failed to provide a HUD-1 or HUD-1 like statement for the disbursement of the loan funds. The failure to provide such statement handicapped the defendants from exercising their statutory right of rescission within three days and other deadlines. The failure to provide such a statement also kept them in a state of poor understanding of the obligations they had undertaken, resulting in their great distress, injury, and possible loss of hearth and home." The defendants also alleged that the plaintiff had "engaged in a continuing course of conduct from the date of the closing [up] to and including the institution of this action."

The plaintiff never moved to strike any of the counterclaims. On October 10, 2013, however, the plaintiff filed a motion for summary judgment and a memorandum of law in support of that motion. The plaintiff also submitted documentary evidence and an affidavit in support of its motion. With respect to the foreclosure complaint, the plaintiff sought an order granting summary judgment as to liability only. The plaintiff also challenged the propriety of the defendants' counterclaims and special defenses.

The defendants filed a memorandum in opposition to the motion for summary judgment as well as a supplemental memorandum, each of which focused almost exclusively on the issue of whether the plaintiff had standing to bring the foreclosure action and whether it had provided evidence supporting standing. The memoranda in opposition did not address the substance of the plaintiff's arguments regarding the legal sufficiency of the various counterclaims. The defendants filed no affidavits or any other evidence in support of their opposition to summary judgment.

On December 6, 2013, the court, *Aurigemma, J.*, issued a memorandum of decision granting the plaintiff's motion for summary judgment on the foreclosure complaint as to liability only, and also rendering summary judgment for the plaintiff on the defendants' counterclaims.[4] With respect to the judgment rendered on the counterclaims, the court reasoned as follows: "The defendants' initial objection to the summary judgment does not address [their] special defenses or [their] counterclaims. [Their] supplemental objection mentions several Superior Court cases where special defenses similar to those [they have] alleged were not stricken. However, the court is not considering a motion to strike. In opposition to a motion for summary judgment, the defendants must present some concrete evidence to support [their] defenses and counterclaims. . . . [They have] failed to do so. . . . The defendants [*have*] presented no evidence to support any of [*their*] arguments." (Emphasis in original.) This appeal followed.

The defendants claim on appeal that the court improperly granted the plaintiff's motion for summary judgment with respect to their counterclaims. The defendants argue that the affidavit and other documentary evidence submitted by the plaintiff in support of its motion for summary judgment were unresponsive to the factual allegations that they raised in their counterclaims, and that "the plaintiff only argued that the counterclaims were improperly joined because they did not relate to the making, validity or enforcement of the mortgage note or deed." According to the defendants, the plaintiff failed to meet its initial burden of showing a lack of a genuine issue of material fact and that it was entitled to judgment as a matter of law, and, thus, contrary to the trial court's decision, they were not obligated to provide any evidentiary support with their opposition in order to avoid summary judgment.

It is important to clarify from the outset that, although the defendants' arguments in their brief on appeal are directed at all five of their counterclaims, the analysis in the brief is limited to the plaintiff's alleged failure to submit evidence in support of summary judgment with respect to the plaintiff's conduct during the foreclosure mediation program only. We therefore view the claim on appeal to be limited to a challenge to the court's decision on the four counterclaims alleging improper conduct in the mediation program.[5] The CUTPA counterclaim did not rely on any facts arising from the mediation program, and the defendants do not include any additional analysis pertaining to the distinct allegations supporting their CUTPA counterclaim. Accordingly, even if the defendants intended to bring this claim to challenge the propriety of the summary judgment decision with respect to all of the counterclaims, the briefing is inadequate with respect to the CUTPA counterclaim, and, thus, we deem it abandoned. See footnote 2 of this opinion.

For the reasons that follow, we conclude that, because there were no disputed issues of material facts relative to whether the defendants' mediation counterclaims were legally insufficient—an issue that the defendants clearly understood as having been raised by the plaintiff in its memorandum in support of the motion for summary judgment, but which they wholly failed to address in their opposition to the motion— and because the defendants could not have benefitted from an opportunity to replead their counterclaims, the court properly granted summary judgment in favor of the plaintiff.

Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The rules governing summary judgment are equally

applicable to counterclaims. Practice Book § 17-44.[6] "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Himmelstein* v. *Windsor*, 116 Conn. App. 28, 42–43, 974 A.2d 820 (2009), aff'd, 304 Conn. 298, 39 A.3d 1065 (2012).

Although, ordinarily, a challenge to the legal sufficiency of a pleading should be raised by way of a motion to strike; see Practice Book § 10-39 (a); our Supreme Court has held that a motion for summary judgment also may be used to challenge a pleading's legal sufficiency provided that the party seeking summary judgment can establish as a matter of law both that the cause of action alleged is legally insufficient and, more importantly, that any defect in the pleading could not be cured by repleading, which the nonmoving party would have had an opportunity to do if the alleged insufficiency had been raised by way of a motion to strike.[7] See *Larobina* v. *McDonald*, 274 Conn. 394, 401, 876 A.2d 522 (2005); see also Practice Book § 10-44. If both prongs are met, the court may properly grant summary judgment as a matter of law. The court in *Larobina* further explained that "we will not reverse the trial court's ruling on a motion for summary judgment that was used to challenge the legal sufficiency of [a pleading] when it is clear that the motion was being used for that purpose and the nonmoving party, by failing to object to the procedure before the trial court, cannot demonstrate prejudice." *Larobina* v. *McDonald*, supra, 402.

A counterclaim that has been filed in contravention of our rules of practice is legally insufficient. Section 10-10 of the Practice Book provides in relevant part that "[i]n any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint . . . ." This court previously has held that, "[i]n a foreclosure action, a counterclaim must relate to the making, validity or enforcement of the mortgage note in order properly to be joined with the complaint." *JP Morgan Chase Bank,*

*Trustee* v. *Rodrigues*, 109 Conn. App. 125, 133, 952 A.2d 56 (2008); see also *New Haven Savings Bank* v. *LaPlace*, 66 Conn. App. 1, 9–11, 783 A.2d 1174 (affirming summary judgment for plaintiff on counterclaims not related to making, validity or enforcement of mortgage note), cert. denied, 258 Conn. 942, 786 A.2d 426 (2001). Thus, "[c]onduct on the part of the [foreclosing party] that occurred after the loan documents were executed and not necessarily directly related solely to enforcement of the note . . . properly has been found not to arise out of the same transaction as the complaint." *JP Morgan Chase Bank, Trustee* v. *Rodrigues*, supra, 134–35, citing *Southbridge Associates, LLC* v. *Garofalo*, 53 Conn. App. 11, 16–21, 728 A.2d 1114, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999). In *CitiMortgage, Inc.* v. *Rey*, 150 Conn. App. 595, 605–606, 92 A.3d 278, cert. denied, 314 Conn. 905, 99 A.3d 635 (2014), this court clarified that a proper application of Practice Book § 10-10 in a foreclosure context requires consideration of whether a counterclaim has some reasonable nexus to, rather than directly attacks, the making, validity or enforcement of the mortgage and note. With these principles in mind, we turn to the present case.

In its memorandum in support of summary judgment, the plaintiff argued to the court that each of the defendants' mediation counterclaims was based on the same set of supporting facts; that those supporting facts involved matters that were unrelated to the making, validity and enforcement of the mortgage or note, but instead involved activities "which are postloan origination, postdefault and postcommencement of the foreclosure action"; and that, as a result, the counterclaims were not part of the same transaction that is the subject of the foreclosure complaint and were improper. We view those arguments as directly challenging whether the counterclaims were properly joined pursuant to the transaction test set forth in Practice Book § 10-10 and, thus, their legal sufficiency. As the trial court stated, the defendants failed to address the substance of the plaintiff's legal challenges to their counterclaims in either their opposition to the motion for summary judgment or their supplemental opposition. The defendants never argued that it was improper for the court to consider the plaintiff's insufficiency arguments in adjudicating the motion for summary judgment or that the plaintiff had waived its right to challenge the joinder of the counterclaims by failing to file a motion to strike. Accordingly, none of those issues is before us on appeal.

The subject matter of the underlying complaint is the foreclosure of a mortgage on property located at 85 Main Street in Essex. The relevant transactions for purposes of Practice Book § 10-10 are, therefore, the execution of the note and mortgage, and the subsequent default. See *JP Morgan Chase Bank, Trustee* v. *Rodrigues*, supra, 109 Conn. App. 132. Our review of the allegations underlying the defendants' mediation

counterclaims shows that, even when viewed in a light most favorable to the defendants as the nonmoving party, all the allegations underlying those counterclaims are addressed to the plaintiff's improper conduct during the foreclosure mediation program. That program did not begin until after the execution of the note and mortgage, and after the foreclosure action was commenced, and, thus, does not reasonably relate to the making, validity or enforcement of the note or mortgage.

Moreover, the defendants have not posited how the factual allegations underlying the counterclaims have any reasonable nexus to the making, validity or enforcement of the mortgage or note, nor can we discern one. See *CitiMortgage, Inc.* v. *Rey*, supra, 150 Conn. App. 605–606. Even if the defendants were provided with an opportunity to replead, we conclude as a matter of law that no permissible corrections could transform the counterclaims so that they comply with the transaction test set forth in Practice Book § 10-10. See footnote 7 of this opinion.

Finally, we reject the defendants' contention that the trial court should have denied the motion for summary judgment because the affidavit and other evidence submitted by the plaintiff were unresponsive to the factual allegations in its counterclaims. In arguing that the mediation counterclaims were legally insufficient, the plaintiff was not factually disputing any of the specific allegations raised in those counterclaims; rather, the plaintiff was asserting that, even assuming the truth of all facts alleged, the counterclaims were improperly joined and it was entitled to summary judgment on the counterclaims as a matter of law. Because the plaintiff's arguments in support of summary judgment were purely legal in nature or relied on undisputed facts, it was unnecessary for it to submit evidence directly responding to the factual allegations of the counterclaims in order to prevail on its motion for summary judgment.

We agree with the defendants' assertion that "[w]hen documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue"; *Allstate Ins. Co.* v. *Barron*, 269 Conn. 394, 405, 848 A.2d 1165 (2004); see also *Harvey* v. *Boehringer Ingelheim Corp.*, 52 Conn. App. 1, 8–9, 724 A.2d 1143 (1999); and we do not approve of any statement by the trial court in its memorandum of decision that could be viewed as setting forth a contrary standard. The fatal problem regarding the defendants' opposition to summary judgment was not a lack of factual support, but their complete failure to address the legal insufficiency of their counterclaims. Under established case law, counterclaims one, two, four and five were not properly joined with the foreclosure complaint, an

opportunity to replead would have been futile, and, therefore, summary judgment properly was rendered by the court.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court also granted summary judgment as to liability only with respect to the foreclosure complaint, and the defendants appealed from that aspect of the court's decision as well. We later granted a motion to dismiss that portion of the appeal for lack of subject matter jurisdiction, however, because the granting of summary judgment as to liability only is not a final judgment. See *Danbury* v. *Hovi*, 34 Conn. App. 121, 122–23, 640 A.2d 609 (1994). Nevertheless, because the court's decision disposed of all counterclaims brought by the defendants against the plaintiff, that aspect of the court's decision constituted a final judgment for purposes of filing an appeal. See Practice Book § 61-2.

[2] The defendants also raise a separate claim on appeal with respect to counterclaim three, which alleged a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Specifically, the defendants claim that the court improperly granted summary judgment on that counterclaim because, in their view, the plaintiff provided no evidence in support of its motion establishing "that the loan was part of the purchase of the property rather than a refinance" or that "the note and mortgage were provided to the defendants at any time prior to summary judgment, let alone at or near the time of closing." The defendants fail to state the legal significance of those assertions and provide no legal analysis regarding the court's decision to grant summary judgment with respect to their CUTPA counterclaim. We, therefore, decline to review this additional claim because it is inadequately briefed. See *Carmichael* v. *Stonkus*, 133 Conn. App. 302, 307, 34 A.3d 1026 ("[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.]), cert. denied, 304 Conn. 911, 39 A.3d 1121 (2012).

[3] The defendants moved to dismiss the foreclosure action for lack of standing, arguing that, despite the allegations to the contrary in the foreclosure complaint, the plaintiff was not the holder of either the note or mortgage at the time the action was commenced. The trial court denied that motion without comment. Attached to the plaintiff's objection to the motion to dismiss was an affidavit from an officer of the mortgage servicing company stating that the plaintiff was the holder of the note at the time the foreclosure action was commenced. The defendants continued to raise the issue of standing in their opposition to summary judgment. That issue, which relates to the ongoing foreclosure action and not to the defendants' counterclaims, is not properly before us as a part of the present appeal. See footnote 1 of this opinion.

[4] We note that the motion for summary judgment and the memorandum of law in support of the motion for summary judgment did not expressly request that the court render judgment on the counterclaims. Nevertheless, in its memorandum in support of the motion, the plaintiff provided legal analysis attacking the validity of the counterclaims, following which the plaintiff asserted that the counterclaims were "legally wrong, inapplicable or insufficiently pleaded" and that there were "no issues of material fact" with respect to them. The defendants acknowledged the plaintiff's challenges to their counterclaims in their supplemental memorandum in opposition to summary judgment, although they did not respond to the merits of the plaintiff's arguments. After summary judgment was granted, the defendants filed a motion for reconsideration of the decision. The defendants did not argue in their motion for reconsideration that the trial court improperly exceeded the relief sought in the motion for summary judgment. In other words, they did not claim that summary judgment on the counterclaims was improper because the motion, on its face, was directed only at liability with respect to the foreclosure complaint. The defendants also have not raised that argument as a claim of error on appeal. Accordingly, whether the court correctly construed the motion for summary judgment as having been directed at the counterclaims as well as the complaint is not an issue that is properly before us on appeal.

[5] The fact that the defendants raised a separate claim of error directed solely at the judgment on the CUTPA counterclaim; see footnote 2 of this

opinion; supports our conclusion that the claim that the plaintiff failed to respond factually to the counterclaims pertains only to the other four counterclaims.

[6] Practice Book § 17-44 provides in relevant part that our rules regarding summary judgment "shall be applicable to counterclaims and cross complaints, so that any party may move for summary judgment upon any counterclaim or cross complaint as if it were an independent action."

[7] "The right afforded by Practice Book § 10-44 to file a new pleading following the granting of a motion to strike, however, is limited to making those corrections needed to render the claims set forth in the original pleading legally sufficient. It is not an opportunity to file wholly amended pleadings that assert new legal claims or rely on a wholly unrelated set of facts, permission for which ordinarily could be obtained only in accordance with the provisions of Practice Book § 10-60." *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 180–81, 73 A.3d 742 (2013).

---