******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SYLVESTER TRAYLOR *v.* STATE
# OF CONNECTICUT ET AL.
# (SC 19977)

Robinson, C. J., and Palmer, Kahn, Ecker and Stevens, Js.

*Syllabus*

The plaintiff sought, inter alia, a judgment declaring unconstitutional the statute (§ 52-190a [a]) that requires a complaint sounding in medical malpractice to be accompanied by a good faith certificate and a letter authored by a similar health care provider opining that there appeared to be evidence of medical negligence. In 2006, following the suicide of his wife, the plaintiff had brought a medical malpractice action against his wife's treating psychiatrist, A, and his employer, C Co., but failed to append to the complaint the good faith certificate and opinion letter required by § 52-190a (a). Although the plaintiff subsequently obtained an opinion letter and amended his complaint, the trial court dismissed the counts of the amended complaint sounding in medical negligence on the ground that the original complaint failed to comply with § 52-190a (a). The trial court subsequently rendered judgment for A and C Co. on the remaining counts. Thereafter, in 2011, the plaintiff commenced two additional actions against A and C Co., their telephone answering service, T Co., and its owners, and other governmental officials, employees and entities, among others, in which he challenged the dismissal of his medical malpractice action. Those actions, both of which included the claim that § 52-190a is unconstitutional, ultimately were resolved against the plaintiff. In 2016, the plaintiff, representing himself, commenced the present action against A, C Co., T Co. and its owners, the state, the Appellate Court, and five Superior Court judges. Thereafter, the trial court granted A and C Co.'s motion for summary judgment on the ground that the claims directed against them were barred by the doctrine of res judicata, as the plaintiff previously had or could have raised and litigated those claims in one of the 2011 actions. The trial court granted the motion to dismiss filed by T Co. and its owners, concluding that the plaintiff's claims against them were barred by the prior pending action doctrine, the plaintiff previously having raised those claims in one of the 2011 actions. The trial court also granted the motion to dismiss filed by the state, the Appellate Court and the Superior Court judges, concluding, inter alia, that the plaintiff's claims for declaratory relief were barred by sovereign immunity and collateral estoppel, and that the claims against the judges were barred by absolute judicial immunity. Accordingly, the trial court rendered judgment for the defendants, and the plaintiff appealed, claiming that § 52-190a is unconstitutional because it imposes a financial burden and other obstacles on plaintiffs seeking to bring medical malpractice claims and, therefore, violated his rights to due process, equal protection, and access to the courts. *Held* that this court could not review the plaintiff's claim that § 52-190a is unconstitutional, as the plaintiff failed to address in his brief to this court any of the issues that provided the basis for the trial court's resolution of the plaintiff's action in favor of the defendants: the plaintiff's failure to challenge in his appellate brief the trial court's independent, alternative conclusions that the claims against the defendants were barred by, inter alia, res judicata, collateral estoppel, and the prior pending action doctrine operated as an abandonment of any challenge to the trial court's conclusions and thus effectively rendered the appeal moot because, even if this court were to agree that § 52-190a is unconstitutional, the trial court's conclusions would stand; moreover, the policy of this state's courts to be solicitous of self-represented litigants could not excuse the plaintiff's complete failure to challenge in his brief to this court the trial court's threshold conclusions.

Argued December 13, 2018—officially released August 27, 2019

*Procedural History*

Action seeking a judgment declaring, inter alia, that a

certain medical malpractice statute is unconstitutional, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the case was transferred to the judicial district of Danbury and then to the judicial district of Hartford, Complex Litigation Docket; thereafter, the court, *Moll, J.*, granted the motions to dismiss filed by the named defendant et al. and the motion for summary judgment filed by defendant Bassam Awwa et al., and rendered judgment thereon for the defendants, from which the plaintiff appealed. *Affirmed.*

*Sylvester Traylor*, self-represented, the appellant (plaintiff).

*Jane R. Rosenberg*, former solicitor general, with whom, on the brief, was *George Jepsen*, former attorney general, for the appellees (named defendant et al.).

*William L. Stevens*, for the appellees (defendant Advanced Telemessaging, LLC, et al.)

*Donald E. Leone, Jr.*, with whom, on the brief, was *Anthony D. Sutton*, for the appellees (defendant Bassam Awwa et al.)

*Opinion*

STEVENS, J. This appeal arises from the most recent in a series of civil actions that the plaintiff, Sylvester Traylor, has brought in state and federal court relating to the suicide of his wife, Roberta Mae Traylor (Roberta). The plaintiff, who is self-represented, brought the present case against the defendants, who are (1) the state of Connecticut, numerous current and former Superior Court judges,[1] and the Appellate Court (state defendants); (2) Roberta's treating psychiatrist, Bassam Awwa, and his employer, Connecticut Behavioral Health Associates, P.C. (Awwa defendants); and (3) Robert Knowles and Neil Knowles, and their business, Advanced Telemessaging (Knowles defendants). The plaintiff now appeals[2] from the judgment of the trial court, *Moll, J.*,[3] rendered in accordance with its granting of the defendants' motions to dismiss and for summary judgment. On appeal, the plaintiff claims that General Statutes § 52-190a,[4] which requires a plaintiff to append a good faith certificate and supporting opinion letter to the complaint in cases of medical negligence, is unconstitutional. Although the plaintiff fully briefed his attack on the constitutionality of § 52-190a, we cannot reach the merits of that claim because of his failure to challenge the trial court's threshold conclusions that his claims against all of the defendants are barred by, inter alia, the doctrines of res judicata and collateral estoppel. Accordingly, we affirm the judgment of the trial court.

The record reveals the following facts relevant to the plaintiff's claim on appeal,[5] as pleaded in his complaint,[6] and the complex procedural history of this case. Beginning in 2002, Awwa and his employer, Connecticut Behavioral Health Associates, P.C., provided psychiatric treatment to Roberta. In 2002, the plaintiff attended a treatment session with Roberta, at which time Awwa became aware of her suicidal thoughts. In early 2004, Awwa prescribed medication for Roberta to treat her major depressive disorder, despite the existence of manufacturers' warnings that (1) the medications should not be prescribed to anyone with suicidal thoughts, (2) "the possibility of a suicide attempt is inherent in depression and may persist until [a] significant remission occurs," and (3) "[c]lose supervision of high risk patients should accompany initial drug therapy." Awwa changed Roberta's medication on several occasions during the period of time leading up to March 1, 2004. The plaintiff contacted the Awwa defendants on nine different occasions to inform them that Roberta was having adverse reactions to the medications that Awwa had prescribed. Roberta also sent Awwa a letter dated December 23, 2003, to that effect. Awwa did not return the plaintiff's telephone calls or otherwise indicate that he appreciated the danger of the situation. On March 1, 2004, Roberta tragically committed suicide.

On June 2, 2006, the plaintiff, acting as a self-represented party, filed a medical malpractice action in New London Superior Court against the Awwa defendants in his own name and as administrator of Roberta's estate, claiming wrongful death, medical malpractice, loss of chance, and loss of consortium. See *Traylor* v. *Awwa*, Superior Court, judicial district of New London, Docket No. CV-06-5001159-S (2006 action). At the time the plaintiff filed the complaint, he had not attached the certificate of good faith and written opinion of a similar health care provider, which are required by § 52-190a. On July 27, 2006, the Awwa defendants moved to dismiss the 2006 action for lack of personal jurisdiction; the trial court, *Hon. D. Michael Hurley*, judge trial referee, denied that motion on December 14, 2006. Subsequently, on October 19, 2006, the plaintiff filed a certificate of good faith and supporting written opinion letter authored by Howard Zonana, a professor of psychiatry at Yale University School of Medicine, opining that there was a good faith basis for the action.

On December 26, 2006, the plaintiff, now represented by counsel, filed a request to amend the complaint pursuant to Practice Book § 10-60. On December 29, 2006, the Awwa defendants objected to the request, and Judge Hurley sustained their objection on January 16, 2007. On January 8, 2007, the Awwa defendants moved to dismiss the 2006 action, claiming that the complaint as originally filed lacked the certificate of merit and written opinion of a similar health care provider required by § 52-190a. Subsequently, on June 1, 2007, Judge Hurley denied that motion to dismiss and thereafter issued numerous discovery orders.

The Awwa defendants did not comply with Judge Hurley's discovery orders. Eventually, counsel for the Awwa defendants stated in court that his clients had destroyed all relevant medical and telephone records that were within their exclusive possession and control, despite their knowledge of their obligation to preserve those records given a pending or impending civil action dating back to Roberta's death in March, 2004. Similarly, the Knowles defendants, acting at the direction of the Awwa defendants, destroyed relevant records in their possession. The plaintiff and his expert witnesses never had an opportunity to examine those records. Subsequently, the case was reassigned to Judge Thomas F. Parker, judge trial referee, who the plaintiff later named as a defendant in the present case. See footnote 5 of this opinion.

On July 12, 2010, the plaintiff, represented by counsel, filed an amended complaint that became the operative complaint in the 2006 action, adding claims of spoliation and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., arising from the destruction of the records.[7] On July 16, 2010, the Awwa defendants moved to dismiss the

amended complaint on the ground that the plaintiff's original June 1, 2006 complaint initiating the action failed to comply with § 52-190a because the required certificate of good faith and opinion letter had not been attached. Judge Parker granted the Awwa defendants' motion, concluding that, although Judge Hurley had denied an earlier motion to dismiss filed by these defendants, that denial preceded the Appellate Court's decisions in *Rios* v. *CCMC Corp.*, 106 Conn. App. 810, 943 A.2d 544 (2008), and *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 966 A.2d 813, cert. denied, 292 Conn. 911, 973 A.2d 661 (2009).[8] See *Traylor* v. *Awwa*, Superior Court, judicial district of New London, Docket No. CV-06-5001159-S, 2010 WL 3584285, *3–4 (August 11, 2010). Relying on *Rios* and *Votre*, Judge Parker concluded that the plaintiff's failure to obtain and file the written opinion letter required by § 52-190a (a) at the initiation of the 2006 action was not remedied by the eventual filing of Zonana's letter, and that Judge Hurley's ruling to the contrary was inconsistent with this appellate precedent. Id., *5.

Judge Parker next determined that Judge Hurley's earlier decision was not entitled to preclusive effect under the doctrines of law of the case or collateral estoppel. Id., *5–6. Judge Parker then concluded that other specifications in the complaint against Connecticut Behavioral Health Associates, P.C., were barred by the statute of limitations in General Statutes § 52-555 (a). Id., *9–10. Accordingly, on August 11, 2010, Judge Parker rendered judgment dismissing counts one through six of the complaint in the 2006 action. Id., *10.

On August 27, 2010, the plaintiff appealed from the judgment of dismissal to the Appellate Court under docket number AC 32641; the Appellate Court subsequently granted the Awwa defendants' motion to dismiss the appeal for lack of jurisdiction on January 5, 2011.[9]

In a subsequent memorandum of decision, Judge Parker rendered judgment dismissing the two remaining counts in the 2006 action, namely, spoliation and CUTPA violations, concluding that the earlier dismissal of the underlying medical malpractice claims for failure to file a good faith certificate and opinion letter meant that the defendants had rebutted the presumption that the plaintiff could have prevailed on those claims in the absence of the acts of spoliation. See *Traylor* v. *Awwa*, Superior Court, judicial district of New London, Docket No. CV-06-5001159-S, 2011 WL 1025029, *9–10 (February 15, 2011). Accordingly, Judge Parker rendered judgment for the defendants in the 2006 action. Id., *10.

On February 23, 2011, the plaintiff, as a self-represented party, appealed from that judgment to this court under docket number SC 18754; that appeal later was transferred to the Appellate Court pursuant to Practice

Book § 65-4. The Appellate Court docketed the plaintiff's appeal under docket number AC 33038, along with another appeal, docket number AC 33039, which had been filed by the plaintiff's then attorney in this case on behalf of the estate. The appeal in docket number AC 33039 subsequently was withdrawn as derivative. After the plaintiff's counsel was granted leave to withdraw from the case on June 30, 2011, the Awwa defendants subsequently moved to dismiss the appeal for lack of a justiciable controversy between the parties, on the ground that the plaintiff's claims were derivative of those of the estate, with the estate's appeal having previously been dismissed.[10] The Appellate Court granted that motion to dismiss on December 16, 2011. On December 29, 2011, the plaintiff filed a petition for certification to appeal from that judgment of dismissal, which this court denied on January 25, 2012. *Traylor* v. *Awwa*, 303 Conn. 931, 36 A.3d 242 (2012).

In 2011, the plaintiff filed a new action in New London Superior Court against the Awwa and Knowles defendants, their attorneys and insurers, then Attorney General Richard Blumenthal, court officials, and several New London prosecutors. *Traylor* v. *Awwa*, Superior Court, judicial district of New London, Docket No. CV-11-5014139-S (first 2011 action). The first 2011 action, which was later removed to federal court, included in its fifteen count complaint a claim that § 52-190a violated the state and federal constitutions. See *Traylor* v. *Awwa*, Docket No. 3:11CV00132 (AWT), 2014 WL 555358, *1 (D. Conn. February 10, 2014). In a series of rulings, the plaintiff's claims in the first 2011 action, including his claim challenging the constitutionality of § 52-190a, were resolved against him.[11]

While the first 2011 action was pending, the plaintiff instituted a second action in 2011, this time in the Hartford judicial district under docket number CV-11-5035895-S (second 2011 action). The complaint in the second 2011 action also included the claim that § 52-190a is unconstitutional, and all of the claims raised in this complaint were resolved against the plaintiff.[12] See generally *Traylor* v. *Gerratana*, 148 Conn. App. 605, 88 A.3d 552, cert. denied, 312 Conn. 901, 91 A.3d 908, and cert. denied, 312 Conn. 902, 112 A.3d 778, cert. denied, U.S. , 135 S. Ct. 444, 190 L. Ed. 2d 336 (2014).

The plaintiff filed the present action in April, 2016, in the Stamford-Norwalk judicial district, seeking declaratory and injunctive relief, as well as damages in excess of $15 million. The plaintiff's lengthy complaint pleaded claims for relief under six separate counts, namely (1) violations of his constitutional rights to due process and equal protection of the laws by the state defendants in connection with their handling of his previous actions, (2) fraudulent concealment by the Awwa and Knowles defendants, (3) spoliation by the Awwa and Knowles defendants, (4) violation of CUTPA

by Advanced Telemessaging and Connecticut Behavioral Health Associates, P.C., (5) intentional infliction of emotional distress by the Awwa and Knowles defendants and Judge Parker, and (6) loss of consortium as to the Awwa and Knowles defendants. The case subsequently was transferred to the Danbury judicial district, and later to the Complex Litigation Docket in the judicial district of Hartford.

After the case was transferred to the Hartford Complex Litigation Docket, the Awwa defendants moved for summary judgment, and the Knowles defendants and the state defendants each moved to dismiss the amended complaint. The plaintiff did not oppose these motions or appear at the February 6, 2017 hearing on them.[13]

With respect to the Awwa defendants' motion for summary judgment, the trial court agreed with their argument that they are entitled to judgment as a matter of law under the doctrine of res judicata. After comparing the complaints, the trial court concluded that res judicata barred the plaintiff's claims of fraudulent concealment, CUTPA violations, and intentional infliction of emotional distress because they previously had been raised and litigated to conclusion in the first 2011 action. The trial court concluded similarly with respect to the plaintiff's claim of loss of consortium because he had an adequate opportunity to raise that claim in the first 2011 action. The trial court further determined that the plaintiff could have challenged the lower courts' conclusions on these issues by way of appealing the first 2011 action. Accordingly, the trial court granted the Awwa defendants' motion for summary judgment.

The trial court addressed the state defendants' motion to dismiss as follows. The trial court first observed that the plaintiff's complaint sought no monetary damages against either the state, the Appellate Court, or any individual state defendant in his or her official capacity. The court further concluded that any claim against any state defendant in his or her individual capacity was, in effect, against the state and, therefore, barred by sovereign immunity. See, e.g., *Spring* v. *Constantino*, 168 Conn. 563, 568–69, 362 A.2d 871 (2012).

As to the plaintiff's claims for declaratory and injunctive relief against the state defendants, the trial court concluded that these claims were barred by sovereign immunity because the plaintiff failed to allege sufficient facts showing that he had suffered a substantial violation of his constitutional rights or that the defendants had acted in excess of their statutory authority.[14] Specifically, the trial court observed that these claims were identical to those raised by the plaintiff in the second 2011 action, and the trial court relied on the Appellate Court's holding in that case that the plaintiff had not sufficiently pleaded "a substantial claim that the state or one of its officers [had] violated [his] constitutional

rights." (Internal quotation marks omitted.) The trial court reasoned that, in this context, the plaintiff's claim for declaratory relief was "barred on the independent grounds of sovereign immunity and collateral estoppel." The trial court also concluded that "the plaintiff [lacked] standing to challenge the constitutionality of § 52-190a because he, in fact, obtained the opinion letter required by the statute." The trial court next determined that the plaintiff's claims against the individual judges were barred by absolute judicial immunity, and that his claims were nonjusticiable to the extent that they sought an order to overturn or reverse the decisions of the Appellate Court or the Superior Court. Accordingly, the trial court granted the state defendants' motion to dismiss.

Finally, the trial court granted the Knowles defendants' motion to dismiss. The trial court agreed with their argument that the plaintiff's spoliation and CUTPA claims against them were barred by the prior pending action doctrine because they also were raised in the first 2011 action. The trial court determined that dismissal was warranted given that the actions are "virtually alike" and that the first 2011 action could have provided the plaintiff with the same remedy, given that "the claims in the two actions so obviously overlap that the plaintiff moved to consolidate the matters."

The trial court rendered judgment for all of the defendants in accordance with its decisions on their motions for summary judgment and dismissal. This appeal followed.[15]

On appeal, the plaintiff has filed a brief claiming that § 52-190a is unconstitutional because the "certificate of merit requirement burdens access to the courts by imposing an expensive and unnecessary prerequisite to having one's day in court." Arguing that access to the courts is a fundamental right under both the state and federal constitutions, the plaintiff contends that the certificate requirement "creates an improper and often impossible obstacle to access to the courts," citing internal pressure from within the medical community not to support plaintiffs in general, as well as the expense of obtaining the relevant medical records and hiring an appropriate expert to review them. In particular, the plaintiff relies heavily on a line of decisions from the Oklahoma Supreme Court invalidating various iterations of that state's certificate of merit statute. See, e.g., *John* v. *Saint Francis Hospital, Inc.*, 405 P.3d 681, 691 (Okla. 2017); *Wall* v. *Marouk*, 302 P.3d 775, 778 (Okla. 2013); *Zeier* v. *Zimmer, Inc.*, 152 P.3d 861, 874 (Okla. 2006). The plaintiff further argues that § 52-190a violates his right to equal protection under the state and federal constitutions.

In response, the defendants contend that review of the merits of the plaintiff's constitutional claims is precluded by his failure to brief challenges to the trial

court's threshold conclusions that his claims in the present case are barred by the doctrines of res judicata, collateral estoppel, and sovereign and judicial immunity, as well as the prior pending action doctrine. The state defendants further argue that, other than his challenge to the constitutionality of § 52-190a, the defendant has abandoned his other constitutional claims against the state defendants challenging various actions taken by the courts, and particularly Judge Parker, during the handling of his cases, both on and off the bench. We agree with the defendants and conclude that the plaintiff's failure to brief a challenge to the trial court's conclusions in its memoranda of decision abandons any such challenge to those conclusions, in essence mooting his constitutional attack on § 52-190a.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 124, 956 A.2d 1145 (2008); see id., 124–25 (claim abandoned when party "devotes little more than a page of her original and reply briefs combined to the discussion of her claim, limiting her argument to the bare assertion that she should not be held legally liable for offer of judgment interest because she was not specifically named in the offer and no unified offer was made to all four defendants," and cites one case "entirely unrelated to the issue on appeal").

In the present case, the plaintiff's complete failure to challenge what the trial court actually decided in its memoranda of decision operates as an abandonment of his claims. "An unmentioned claim is, by definition, inadequately briefed, and one that is generally . . . considered abandoned." (Internal quotation marks omitted.) *State* v. *Saucier*, 283 Conn. 207, 223, 926 A.2d 633 (2007). Indeed, when an appellant entirely fails to challenge the trial court's conclusions with respect to the merits of the case, thus leaving them intact despite the briefing of other issues, the appeal is, in essence, rendered moot. See, e.g., *Hartford* v. *CBV Parking Hartford, LLC*, 330 Conn. 200, 210, 192 A.3d 406 (2018) ("[u]ndoubtedly, if there exists an unchallenged, independent ground to support a decision, an appeal from that decision would be moot, as this court could not afford practical relief even if the appellant were to prevail on the issue raised on appeal"); *Middlebury* v. *Connecticut Siting Council*, 326 Conn. 40, 53, 161 A.3d 537 (2017) (declining to review claim that trial court improperly determined that claims were abandoned by

inadequate briefing because "the plaintiffs have failed to challenge the trial court's alternative conclusions rejecting the claims on the merits"); *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 379 n.23, 119 A.3d 462 (2015) ("where alternative grounds found by the reviewing court and unchallenged on appeal would support the trial court's judgment, independent of some challenged ground, the challenged ground that forms the basis of the appeal is moot because the court on appeal could grant no practical relief to the complainant" [internal quotation marks omitted]).

We acknowledge that the plaintiff is a self-represented party and that it "is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . The courts adhere to this rule to ensure that [self-represented] litigants receive a full and fair opportunity to be heard, regardless of their lack of legal education and experience . . . .

"This rule of construction has limits, however. Although we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law. . . . A . . . court does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised." (Citations omitted; internal quotation marks omitted.) *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 569–70, 877 A.2d 761 (2005); see also *Costello* v. *Goldstein & Peck, P.C.*, 321 Conn. 244, 257–58, 137 A.3d 748 (2016) ("[t]his court has always been solicitous of the rights of [self-represented] litigants and, like the trial court, will endeavor to see that such a litigant shall have the opportunity to have his case fully and fairly heard so far as such latitude is consistent with the just rights of any adverse party" [internal quotation marks omitted]).

The solicitous treatment we afford a self-represented party does not allow us to address a claim on his behalf when he has failed to brief that claim. See, e.g., *Deutsche Bank National Trust Co.* v. *Pollard*, 182 Conn. App. 483, 487, 189 A.3d 1232 (2018) ("Other than a broad and conclusory claim that the court too narrowly construed the transaction test, the defendant has provided this court with no argument specific to any count of his counterclaim; nor has he set forth any reasoning in support of the notion that his pleadings fall within the parameters of the transaction test. Although we recognize and adhere to the well-founded policy to accord leeway to self-represented parties in the appeal process, our deference is not unlimited; nor is a litigant on appeal relieved of the obligation to sufficiently articulate a claim so that it is recognizable to a reviewing court."

[Footnote omitted.]); *Tonghini* v. *Tonghini*, 152 Conn. App. 231, 239–40, 98 A.3d 93 (2014) ("declin[ing] to enter into the statutory thicket of the family support magistrate laws without any meaningful assistance from the parties" and observing that "the fact that the defendant is self-represented cannot excuse or cure . . . obvious inadequacies in the record"); *In re Nicholas B.*, 135 Conn. App. 381, 384, 41 A.3d 1054 (2012) (declining to review self-represented respondent's claim that his trial counsel rendered ineffective assistance because his "argument is devoid of any legal analysis, let alone citation to any authority," and determining solicitude to self-represented parties was unwarranted because "[t]he major deficiencies in the presentation of this claim, which undeniably interfere with the petitioners' right to respond adequately to the claim, fall well outside of that degree of latitude afforded self-represented parties"); but cf. *State* v. *Brown*, 310 Conn. 693, 698 n.4, 80 A.3d 878 (2013) (noting policy of solicitous treatment of self-represented parties and treating defendant's motion to correct illegal sentence filed pursuant to nonexistent " 'Practice Book Rule § 93-22' " as properly filed "pursuant to Practice Book § 43-22").

In the present case, the plaintiff has not addressed any of the issues, including res judicata, collateral estoppel, standing,[16] and the prior pending action doctrine, which provided the dispositive bases for the trial court's memoranda of decision.[17] The plaintiff's status as a self-represented party does not permit us to overlook that complete omission. Because this omission operates as an abandonment of any challenge to what the trial court actually decided in this case,[18] we cannot address the single substantive issue that the plaintiff has raised, namely, his challenge to the constitutionality of § 52-190a.[19] Accordingly, we are required to affirm the judgment of the trial court.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The plaintiff named the following current and former Superior Court judges as defendants: James W. Abrams, Emmet L. Cosgrove, Kari A. Dooley, Thomas F. Parker, and Terence A. Zemetis.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] Given the multiplicity of Superior Court judges involved in this case in both adjudicative and party capacities, for the sake of simplicity, all references herein to the trial court are to Judge Moll unless otherwise noted.

[4] General Statutes § 52-190a provides in relevant part: "(a) No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good

faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. . . .

\* \* \*

"(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

[5] We note that the vast majority of the allegations in the plaintiff's 105 page complaint consists of facts supporting his various due process claims arising from the handling of his first medical malpractice action, with particular attention to the actions of Judge Thomas F. Parker, judge trial referee, both on and off the bench, along with the fact that Judge Parker ultimately was not renominated to his position as a judge trial referee. Because the plaintiff's sole claim on appeal concerns the constitutionality of § 52-190a, which the trial court did not reach, we need not discuss those other allegations in any detail.

[6] "The standard of review for a court's decision on a motion to dismiss [under Practice Book § 10-30] is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Footnote omitted; internal quotation marks omitted.) *Cuozzo* v. *Orange*, 315 Conn. 606, 614, 109 A.3d 903 (2015); see also *Miller's Pond Co., LLC* v. *New London*, 273 Conn. 786, 789 n.5, 873 A.2d 965 (2005) (noting that motion for summary judgment, which was treated as "equivalent of a common-law motion for judgment on the pleadings," requires court to "accept as undisputed the facts pleaded in the complaint").

[7] We note that, in 2009, the plaintiff also brought a separate mandamus action in the New London judicial district under docket number CV-09-4009523-S, challenging an earlier decision of the trial court, *Abrams J.*, to open a judgment of default that had been rendered against the Awwa defendants in the 2006 action on the ground that they had violated discovery orders previously rendered by Judge Hurley. See *Traylor* v. *State*, 128 Conn. App. 182, 183, 15 A.3d 1173, cert. denied, 301 Conn. 927, 22 A.3d 1276 (2011). Judge Abrams granted the Awwa defendants' motion to open because he had rendered the default judgment without reviewing their properly filed objection and subsequently determined that they had not violated any discovery orders. Id., 184. Judge Parker subsequently granted the motion to dismiss the mandamus action "because the plaintiff did not claim that any of the discovery orders could not be subject to an appeal once the malpractice action had concluded." Id., 184–85. The Appellate Court affirmed that judgment denying the writ of mandamus "because the plaintiff has failed to demonstrate that there is no other specific adequate remedy available to review the court's actions. Moreover, because the actions of the court that are complained of here may be made an issue in the plaintiff's appeal from the final judgment of the medical malpractice action, mandamus is not warranted." Id., 186.

[8] In *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 30–31 n.17, 12 A.3d 865 (2011), this court discussed, but took no position regarding, the

continued viability of the holding in *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 585–86, that the opinion letter requirement of § 52-190a (a) cannot be satisfied through an opinion of a similar health care provider filed with an amended pleading that was not filed at the commencement of the action.

[9] In their motion to dismiss, the Awwa defendants claimed that the Appellate Court lacked jurisdiction because there was (1) no appealable final judgment and (2) no justiciable controversy between the parties to the appeal. The Appellate Court granted the Awwa defendants' motion in an order without an opinion.

[10] The Appellate Court granted the attorney's motion to withdraw, which was filed in accordance with the plaintiff's wishes as stated during the preargument conference, and sua sponte ordered that his appeal as administrator of the estate would be dismissed unless he obtained new counsel within thirty days. The plaintiff did not obtain new counsel. The Appellate Court subsequently dismissed that portion of the appeal on August 2, 2011. On August 4, 2011, the plaintiff filed a petition for certification from that portion of the order, which this court dismissed for lack of a final appellate judgment; see General Statutes § 51-197f; on September 28, 2011. See *Traylor* v. *Awwa*, 302 Conn. 937, 28 A.3d 989 (2011).

[11] More specifically, the claims against the state defendants in the first 2011 action were dismissed by the District Court on the ground that the plaintiff's complaint failed to state a claim under each count or each count was barred by sovereign immunity. *Traylor* v. *Awwa*, supra, 2014 WL 555358, *12. The plaintiff appealed from this judgment to the United States Court of Appeals for the Second Circuit but withdrew that appeal on April 15, 2014.

The District Court also dismissed the plaintiff's claims in the first 2011 action against the Awwa defendants. The plaintiff also appealed from this judgment to the Second Circuit, but withdrew that appeal on April 15, 2014. The District Court denied the motion to dismiss with respect to CUTPA and spoliation allegations against the Awwa defendants' insurer and attorney; see *Traylor* v. *Awwa*, 899 F. Supp. 2d 216, 224–27 (D. Conn. 2012); but subsequently granted a motion for summary judgment filed by these defendants. See *Traylor* v. *Awwa*, 88 F. Supp. 3d 102, 109–10 (D. Conn. 2015). The plaintiff appealed from the granting of that motion for summary judgment to the Second Circuit; the Second Circuit dismissed that appeal on November 19, 2015.

The District Court remanded the remaining claims against the Knowles defendants in the first 2011 action to New London Superior Court, where they were transferred to the Complex Litigation Docket in the judicial district of Waterbury. The first 2011 action was then transferred again to the Stamford-Norwalk judicial district, where Judge Genuario granted the Knowles defendants' motion for summary judgment on October 26, 2016. On June 21, 2017, this court dismissed the plaintiff's writ of error challenging the granting of summary judgment in the first 2011 action, and the Appellate Court subsequently denied the plaintiff's motion for permission to file a late appeal from that granting of summary judgment.

[12] Specifically, the second 2011 action was instituted against numerous judges, legislators, and court employees, and the Awwa defendants' insurer, challenging rulings in the plaintiff's other cases as violations of the state and federal constitutions, along with the constitutionality of § 52-190a. See generally *Traylor* v. *Gerratana*, 148 Conn. App. 605, 88 A.3d 552, cert. denied, 312 Conn. 901, 91 A.3d 908, and cert. denied, 312 Conn. 902, 112 A.3d 778, cert. denied, U.S. , 135 S. Ct. 444, 190 L. Ed. 2d 336 (2014). The Appellate Court upheld the dismissal of the second 2011 action on the ground that it was barred by the doctrines of qualified and absolute judicial and legislative immunity. Id., 612–15; see id., 615 (concluding that claims against insurer were abandoned because of inadequate briefing). Particularly pertinent to the present case, the Appellate Court held that the plaintiff's claims in the second 2011 action seeking declaratory and injunctive relief against the legislative defendants on the ground that § 52-190a is unconstitutional were barred by sovereign immunity because "[n]one of the claims raised by the plaintiff allege[s] a substantial claim that clearly demonstrate[s] an incursion upon [his] constitutionally protected interests." (Internal quotation marks omitted.) Id., 611.

While litigation continued in the first and second 2011 actions, the plaintiff continued to apply for fee waivers in the New London judicial district to allow him to reopen the original 2006 action and to file new actions. The trial court, *Cosgrove, J.*, denied two of these applications pursuant to General Statutes § 52-259b (c) after a hearing, on the ground that the plaintiff "has

repeatedly filed actions with respect to the same or similar matters; that these filings demonstrate an extended pattern of frivolous filings that have been without merit; that this filing is consistent with the [plaintiff's] previous pattern of frivolous filings; and that the granting of the fee waiver would constitute a flagrant misuse of [J]udicial [B]ranch resources." *Traylor* v. *Awwa*, Superior Court, judicial district of New London, Docket No. CV-06-5001159-S, 2016 WL 823033, *4 (February 5, 2016). Ultimately, however, Judge Povodator, sitting in the Stamford-Norwalk judicial district where this case originally was filed, granted the fee waiver on March 14, 2016, which allowed the plaintiff to pursue the present action.

[13] We note that the plaintiff's conduct in responding to the motions and appearing in court was at issue before the trial court. After giving the plaintiff an additional month of time to file responsive briefs, in addition to a previous ninety day extension before its assignment to the case, the trial court then granted the plaintiff an extension of an additional sixty days, ultimately setting January 23, 2017, as a due date for briefs and February 6, 2017, as the hearing date. On February 1, 2017, the plaintiff moved for continuance of a " 'February 23' status conference" on the ground that he needed more time to prepare and represented therein that he had contacted the defendants' attorneys regarding his request but they had not responded to him. The plaintiff also indicated in a separate filing that he required a continuance because he had vision problems resulting from medication.

Because there was no status conference scheduled for February 23, 2017, the trial court presumed that the plaintiff sought a continuance of the only scheduled event, namely, the February 6 hearing. On February 2, 2017, the trial court issued an order denying a continuance of the February 6 hearing, but directed the plaintiff to appear at that hearing to argue in support of his request for more time to respond, and to submit for in camera review medical documentation supporting his arguments that he "was physically unable" to participate. On February 3, 2017, the plaintiff obtained his medical records from a Veterans Affairs (VA) office and then had them sent from the New London courthouse to a court officer in Hartford via e-mail. The plaintiff then filed a "notice of compliance" stating that he would not attend the February 6 hearing, "claiming for the first time that he was unable to drive as a result of prescribed medication."

At the February 6 hearing before the trial court, the court officer confirmed on the record that, on the afternoon of February 3, the plaintiff had "called him and said that he had *driven to a VA office* that day to obtain his medical records and that he had *driven to the New London courthouse* that day to have those records e-mailed to [Judge Moll's] chambers." (Emphasis in original.) Given that the plaintiff had driven a car that day and his medical records did not support any claims of vision problems, the trial court found that the plaintiff was "flagrantly disregarding the court's deadlines and the court's February 3, 2017 order denying his request to continue the February 6, 2017 hearing. Accordingly, the [trial] court proceeded with the February 6, 2017 hearing, which [the plaintiff] failed to attend." The plaintiff has not challenged that finding or the denial of additional extensions in this appeal. See footnote 18 of this opinion.

[14] As explained in *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349, 977 A.2d 636 (2009), this court has recognized three exceptions to sovereign immunity: "(1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Citations omitted; internal quotation marks omitted.)

[15] On January 7, 2019, the plaintiff filed a motion asking us to take judicial notice of certain misrepresentations that he claimed counsel for the state and the Awwa defendants had made during oral argument in this appeal on December 13, 2018. By order dated February 27, 2019, we denied this motion.

[16] Although the plaintiff does not address the issue of standing, we note—sua sponte, because it implicates our subject matter jurisdiction; see, e.g., *Fairfield Merrittview Ltd. Partnership* v. *Norwalk*, 320 Conn. 535, 548, 133 A.3d 140 (2016)—that the trial court concluded that the plaintiff lacked standing because he had failed to allege a substantial claim that the opinion letter requirement of § 52-190a was an incursion on his constitutionally protected interests. In so concluding, the trial court relied upon the Appellate Court's decision in *Traylor* v. *Gerratana*, supra, 148 Conn. App. 605, in

which the Appellate Court simply concluded that the plaintiff's amended complaint in that action had made "only conclusory allegations that § 52-190a violated his constitutional rights to equal access to court, separation of powers, equal protection, due process, and a trial by jury. None of the claims raised by the plaintiff alleges a substantial claim that clearly demonstrate[s] an incursion upon [his] constitutionally protected interests." (Internal quotation marks omitted.) Id., 611. We disagree with the trial court's reliance on this reasoning as applied to the present case. Having reviewed the operative complaint in this case, we conclude that the allegations in the plaintiff's complaint, taken as true—and particularly the allegation that § 52-190a creates an "economic barrier" to access to the courts, given that "[t]he average burden of cost for the prelitigation certificate of merit is $10,000 to $20,000," with a disproportionate effect on African American litigants like the plaintiff—are sufficiently specific allegations of economic injury to demonstrate an incursion upon constitutionally protected interests. See, e.g., *Allco Finance Ltd.* v. *Klee*, 861 F.3d 82, 95 (2d Cir. 2017) (allegation that state's request for proposal charged unlawful fees was injury "sufficiently 'concrete' and 'particularized' to qualify as injur[y]-in-fact"), cert. denied,     U.S.    , 138 S. Ct. 926, 200 L. Ed. 2d 203 (2018); *E.M.* v. *Dept. of Education*, 758 F.3d 442, 459 (2d Cir. 2014) (parent had standing to bring claim under Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., when she became "subject to a contractual obligation to pay [private school] tuition . . . and . . . incurred that obligation as a direct result of the [d]epartment's alleged failure to provide her child a [free and adequate public education]"). Given the significant expense allegedly incurred by the plaintiff, and the fact that his failure to obtain the letter at the outset of the 2006 action led to its dismissal, we also disagree with the trial court's conclusion that "the plaintiff lacks standing to challenge the constitutionality of § 52-190a because he, in fact, obtained the opinion letter required by the statute." Nevertheless, the plaintiff's failure to challenge the state defendants' other grounds for dismissal renders this standing conclusion harmless error not requiring reversal.

We further note that, because the plaintiff's standing to challenge the constitutionality of § 52-190a emanates from his interests in the claims relating to the 2006 action, his opportunity to assert this constitutional challenge was in the lengthy proceedings before the trial court in the 2006 action and during the subsequent appeals. "[I]t is well settled that [f]inal judgments are . . . presumptively valid . . . and collateral attacks on their validity are disfavored. . . . The reason for the rule against collateral attack is well stated in these words: The law aims to invest judicial transactions with the utmost permanency consistent with justice. . . . Public policy requires that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . . [T]he law has established appropriate proceedings to which a judgment party may always resort when he deems himself wronged by the court's decision. . . . If he omits or neglects to test the soundness of the judgment by these or other direct methods available for that purpose, he is in no position to urge its defective or erroneous character when it is pleaded or produced in evidence against him in subsequent proceedings." (Citation omitted; internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 771, 143 A.3d 578 (2016).

Put differently, under the circumstances presented in this case, any claims by the plaintiff that § 52-190a should not be applied to him because of its unconstitutionality were matters required to be asserted in the action in which the decision to apply the statute to him was made, and any challenges to the decision applying the statute to him were matters subject to direct appeal. "[I]t is now well settled that, [u]nless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal *entirely invalid*, he or she must resort to direct proceedings to correct perceived wrongs . . . . A collateral attack on a judgment is a procedurally impermissible substitute for an appeal." (Emphasis in original; internal quotation marks omitted.) Id., 771–72; see also, e.g., *In re Shamika F.*, 256 Conn. 383, 406–407, 773 A.2d 347 (2001).

[17] We acknowledge that the plaintiff touched on issues of standing, collateral estoppel, and res judicata briefly during the principal and rebuttal portions of his oral argument before this court. Raising a claim at oral argument is not, however, a substitute for adequately briefing that claim. See, e.g., *Studer* v. *Studer*, 320 Conn. 483, 493 n.11, 131 A.3d 240 (2016) ("[i]t is well settled that claims on appeal must be adequately briefed, and cannot be raised for the first time at oral argument before the reviewing

court" [internal quotation marks omitted]).

[18] We note that the plaintiff's appeal form specifies both "[f]inal judgment" and "the decision regarding [the plaintiff's] motion for an extension of time due to illness"; see footnote 13 of this opinion; as the challenged actions of the trial court. The plaintiff has not, however, addressed the denial of his requested extensions of time in his brief. Accordingly, we deem any challenges to that discretionary decision similarly abandoned.

[19] We note that the Appellate Court has previously rejected a similar constitutional challenge to the good faith certificate requirement of § 52-190a under the open courts provision of the state constitution; see Conn. Const. art. I, § 10; and the due process clauses of the federal and state constitutions. See *Lohnes* v. *Hospital of Saint Raphael*, 132 Conn. App. 68, 81–84, 31 A.3d 810 (2011), cert. denied, 303 Conn. 921, 34 A.3d 397 (2012).

––––––––––––––––––––––––––––––