******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# RENEE GIORDANO *v.* CARL V. GIORDANO
## (AC 42737)

Prescott, Moll and Suarez, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court granting the plaintiff's motion for contempt and awarding her appellate attorney's fees. *Held*:

1. The trial court did not err in granting the plaintiff's motion for contempt; contrary to the defendant's argument of a good faith misunderstanding, the court did not err in concluding that the defendant wilfully violated a clear and unambiguous court order that provided that he was required to make weekly payments to the plaintiff until a lump sum alimony award was paid in full, which he failed to do, as the court credited evidence from the plaintiff showing that the defendant owed her an outstanding balance, and the court found that the defendant had the ability to pay and did not present credible testimony or evidence that he had a good faith belief that he had paid the lump sum alimony obligation in full.

2. The trial court did not abuse its discretion in awarding appellate attorney's fees to the plaintiff; the court found that the defendant was not credible with respect to his purported inability to pay and that, pursuant to statute (§ 46b-62), the award of attorney's fees was necessary to avoid undermining the judgment of contempt and the court's orders regarding the defendant's obligation to pay the outstanding balance of the lump sum alimony owed to the plaintiff, regardless of the plaintiff's ability to pay the fees.

Argued January 7—officially released April 6, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Solomon, J.*; judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Margaret Murphy, J.*, granted the plaintiff's motion for contempt, and the defendant appealed to this court; subsequently, the court, *Margaret Murphy, J.*, granted the plaintiff's motion for appellate attorney's fees, and the defendant filed an amended appeal. *Affirmed*.

*Carl V. Giordano*, self-represented, the appellant (defendant).

*Steven R. Dembo*, with whom were *Caitlin E. Kozloski*, and, on the brief, *P. Jo Anne Burgh*, for the appellee (plaintiff).

*Opinion*

MOLL, J. In this dissolution matter, the defendant, Carl V. Giordano, appeals from the judgment of the trial court granting two postjudgment motions filed by the plaintiff, Renee Giordano. On appeal, the defendant claims that the court improperly granted the plaintiff's (1) motion for contempt and (2) motion for appellate attorney's fees. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The parties were married in 1992. In 2004, the plaintiff commenced the present dissolution action against the defendant. In October, 2005, the trial court, *Solomon, J.*, rendered a judgment of dissolution, which incorporated a separation agreement executed by the parties. Under article VI of the separation agreement, titled "Property Settlement," the defendant was required to pay the plaintiff $425,000, in various installments, in exchange for retaining his ownership interests in certain commercial properties. In addition, article VI provided that, "[i]f the [defendant] sells, transfers or otherwise divests himself of any of his interest in [the commercial properties], he shall immediately pay the [plaintiff] any funds due her at that time so that she is paid in full."

In 2009, the plaintiff filed a postjudgment amended motion for contempt, asserting that the defendant had sold the commercial properties in a "like-kind" exchange; see generally 26 U.S.C. § 1031 (2018); and, as a result, he was obligated to make immediate payment of the sums owed to the plaintiff in accordance with article VI of the separation agreement. The trial court, *Frazzini, J.*, granted the motion for contempt, and this court affirmed the judgment of contempt on appeal. See *Giordano* v. *Giordano*, 127 Conn. App. 498, 499, 14 A.3d 1058 (2011).

Following this court's decision in *Giordano* v. *Giordano*, supra, 127 Conn. App. 498, the parties entered into an agreement, dated May 5, 2011, for the purpose of "settling all of the claims and demands which each may have against the other arising from the [j]udgment dissolving their marriage and all subsequent court matters as it relates to the property settlement." The agreement was entered as a court order on June 1, 2011 (June, 2011 order). Pursuant to the June, 2011 order, the defendant was required to "satisfy his obligations to pay to the [p]laintiff a property settlement per [a]rticle IV of the [j]udgment of [d]issolution, by payments to the [p]laintiff as outlined herein, totaling $350,000." The June, 2011 order provided that $175,000 of the $350,000 owed to the plaintiff would be paid from the sale of the defendant's interest in certain real estate in East Windsor. That particular payment is not at issue in this appeal. The June, 2011 order further provided

that the remaining $175,000 would be paid to the plaintiff as lump sum alimony. Such alimony was ordered to be paid at a rate of $200 per week for one year commencing upon the termination of the periodic alimony orders in place at the time, which was expected to occur in April, 2012, and, thereafter, at a rate of $300 per week until the sum was paid in full. The defendant was also required to make payments toward the foregoing lump sum alimony obligation in the event he received certain monies described in the June, 2011 order.

On February 8, 2019, the plaintiff, representing herself, filed the postjudgment motion for contempt at issue in this appeal.[1] The plaintiff contended that the defendant (1) owed her a balance of $62,510 in lump sum alimony and (2) had failed to remit to her the prior three $300 weekly payments owed under the June, 2011 order. On March 12, 2019, following an evidentiary hearing at which both parties were self-represented, the court orally granted the motion for contempt. The same day, the court issued a written order setting forth its decision. As relief, the court ordered the defendant to pay the plaintiff (1) $2745 on or before March 15, 2019, and (2) $1300 per month starting on April 1, 2019, continuing until the outstanding lump sum alimony due to the plaintiff was paid off on February 1, 2023. On March 26, 2019, the defendant filed this appeal from the judgment of contempt.

On April 3, 2019, the plaintiff, represented by counsel, filed a motion for appellate attorney's fees. On April 4, 2019, the defendant, representing himself, filed an objection. On May 1, 2019, following an evidentiary hearing, the court orally granted the motion, awarding the plaintiff $10,000 in attorney's fees to be paid by the defendant at a rate of $100 per week.[2] On May 9, 2019, the defendant amended this appeal to encompass the court's award of attorney's fees. Additional facts and procedural history will be set forth as necessary.

I

The defendant's first claim is that the trial court improperly granted the plaintiff's postjudgment motion for contempt. We disagree.

"Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . Our review of a trial court's judgment of civil contempt involves a two part inquiry. [W]e first consider the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the

trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding. . . . Whether a party's violation was wilful depends on the circumstances of the particular case and, ultimately, is a factual question committed to the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Hall* v. *Hall*, 335 Conn. 377, 391–92, 238 A.3d 687 (2020). "[T]his court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [E]very reasonable presumption will be given in favor of the trial court's ruling, and [n]othing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Casiraghi* v. *Casiraghi*, 200 Conn. App. 771, 787, 241 A.3d 717 (2020).

The following additional facts are relevant to our resolution of the defendant's claim. During the evidentiary hearing on the plaintiff's motion for contempt, the court heard testimony from the parties. In addition, the court admitted into evidence an accounting offered and prepared by the plaintiff, which reflected payments made by the defendant against the $175,000 in lump sum alimony owed to the plaintiff under the June, 2011 order (plaintiff's accounting). The plaintiff's accounting indicated that the defendant (1) made a $12,090 payment to her in 2013, and (2) made payments to her from April, 2012, through 2018, in either $200 or $300 weekly increments in accordance with the June, 2011 order, but paid her only $900 in 2019, leaving an outstanding balance of $62,510 in lump sum alimony.

The court also admitted into evidence several exhibits offered by the defendant, including (1) two letters, dated January 24, 2019, and February 5, 2019, respectively, which the defendant had mailed to the plaintiff, and (2) an accounting prepared by the defendant (defendant's accounting). In the January 24, 2019 letter, the defendant wrote, inter alia, that he was "about 95 [percent] certain" that he had overpaid the plaintiff by approximately $22,190, and he asked the plaintiff to review an attached accounting that he had prepared that purportedly supported his calculations. He further wrote that "[o]f course it is also possible that I am wrong and if that is the case of course I would resume paying you what I owe you . . . but I do not plan to pay you if indeed I have already overpaid as I have stated herein." In the February 5, 2019 letter, the defendant wrote, inter alia, that he was "98 [percent] sure" of the data he had provided to the plaintiff in the prior letter, and he asked the plaintiff to respond indicating whether she agreed with his claim. It is undisputed that the plaintiff received, but did not reply to, the letters.

The defendant's accounting[3] reflected various payments made by the defendant, including some that predated the June, 2011 order, which he credited against the lump sum alimony owed to the plaintiff. According to his calculations, the defendant either overpaid the plaintiff by $22,190 or owed her $2810, depending on whether a certain $25,000 payment could be credited against the lump sum alimony award.

In granting the plaintiff's motion for contempt, the court determined that (1) the June, 2011 order was clear and unambiguous in requiring the defendant, starting in April, 2013, to pay the plaintiff $300 per week until the $175,000 lump sum alimony award was paid in full, and (2) the defendant wilfully violated the order. In addition, the court found that (1) the defendant was not credible, (2) the defendant had the ability to pay, and (3) the plaintiff was credible and the plaintiff's accounting was correct.

The defendant does not challenge the court's conclusion that the June, 2011 order was clear and unambiguous, but he claims that the court improperly determined that his noncompliance with the June, 2011 order was wilful. Specifically, the defendant asserts that the court failed to consider the two letters and the defendant's accounting, which, he contends, demonstrated that he had a good faith belief that he had paid the lump sum alimony obligation in full. He further asserts that the court ignored the undisputed fact that the plaintiff did not reply to his letters, which, he posits, established that a good faith disagreement existed as to whether he had satisfied his payment obligations under the June, 2011 order. We are not persuaded.

During the hearing on the plaintiff's motion for contempt, before granting the motion, the court stated that it had reviewed the parties' respective exhibits and testimony. As the court expressly stated on the record and in its written order, however, it found that the defendant was not credible. It is reasonable to infer that the court's finding regarding the defendant's lack of credibility extended to the contents of the defendant's letters mailed to the plaintiff and to the defendant's accounting, which were all crafted by the defendant.[4] Put simply, the court did not ignore the defendant's letters and the defendant's accounting; rather, the court discredited them. "We will not disturb credibility determinations made by the court. See *Greco* v. *Greco*, [275 Conn. 348, 359, 880 A.2d 872 (2005)] (on appeal, '[w]e cannot retry the facts or pass on the credibility of the witnesses' . . .)." *Fronsaglia* v. *Fronsaglia*, 202 Conn. App. 769, 779,      A.3d      (2021); see also *Talbot* v. *Talbot*, 148 Conn. App. 279, 293, 85 A.3d 40 (stating that trial court was not required to credit new financial affidavit submitted by plaintiff), cert. denied, 311 Conn. 954, 97 A.3d 984 (2014). Accordingly, we reject the defendant's claim that the court erred in determining that he had wilfully

violated the June, 2011 order, and, thus, we conclude that the court did not commit error in granting the plaintiff's motion for contempt.

## II

The defendant's next claim is that the trial court improperly granted the plaintiff's motion for appellate attorney's fees. This claim is unavailing.

"When making an order for the payment of attorney's fees, the court must consider factors that are essentially the same as those that must be considered when awarding alimony. . . . [General Statutes §] 46b-62[5] governs the award of attorney's fees in dissolution proceedings and provides that the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in [General Statutes §] 46b-82[6]. . . . This reasonableness requirement balances the needs of the obligee spouse with the obligor spouse's right to be protected from excessive fee awards. . . .

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to the rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders. . . . Whether to allow counsel fees [under §§ 46b-62 and 46b-82], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Citations omitted; footnotes added; internal quotation marks omitted.) *Lynch* v. *Lynch*, 153 Conn. App. 208, 246–47, 100 A.3d 968 (2014), cert. denied, 315 Conn. 923, 108 A.3d 1124, cert. denied, 577 U.S. 839, 136 S. Ct. 68, 193 L. Ed. 2d 66 (2015).

The following additional facts are relevant to our disposition of the defendant's claim. Both parties filed updated financial affidavits with the court in connection with the plaintiff's motion for appellate attorney's fees. During the evidentiary hearing on the motion, the defendant provided testimony regarding his financial circumstances and argued that he did not have the ability to pay the plaintiff's attorney's fees. The plaintiff testified that she had paid her attorney a $10,000 retainer via credit card and that the payment of that charge would have to come from the monies remitted to her by the defendant under the June, 2011 order.

In orally granting the plaintiff's motion for appellate attorney's fees, the court found that (1) the defendant

was not credible regarding his purported inability to pay the plaintiff's attorney's fees, (2) the defendant had the ability to pay, and (3) awarding the plaintiff attorney's fees was "necessary to prevent undermining by the defendant of prior court orders, which included finding him liable for a contempt and ordering him to pay what he owes the plaintiff." In a subsequent written articulation,[7] the court further stated in relevant part that it had "granted the plaintiff's request for attorney's fees for the appeal . . . pursuant to § 46b-62 and the relevant case law because the failure to award attorney's fees would undermine the court's other financial orders after finding the defendant in contempt."

The defendant claims that the court improperly granted the plaintiff's motion for appellate attorney's fees for two reasons. First, he contends that his financial affidavit and testimony during the evidentiary hearing on the motion demonstrated that he did not have the ability to pay the attorney's fees award. This contention is unavailing because the court, in finding that the defendant had the ability to pay, expressly found that the defendant was not credible with respect to his purported inability to pay. We will not second-guess the court's credibility determination or retry the facts on appeal. See *Fronsaglia* v. *Fronsaglia*, supra, 202 Conn. App. 779.

Second, the defendant contends that the record established that the plaintiff had the ability to pay her own attorney's fees, which the court failed to consider, in effect punishing the defendant for filing this appeal. We are not persuaded. As our Supreme Court has explained, "ample liquid funds [are] not an absolute litmus test for an award of counsel fees. . . . [To] award counsel fees to a spouse who had sufficient liquid assets would be justified, if the failure to do so would substantially undermine the other financial awards." (Citation omitted; internal quotation marks omitted.) *Maguire* v. *Maguire*, 222 Conn. 32, 44, 608 A.2d 79 (1992); see also *Ramin* v. *Ramin*, 281 Conn. 324, 352, 915 A.2d 790 (2007) ("the general rule under *Maguire* is that an award of attorney's fees in a marital dissolution case is warranted only when at least one of two circumstances is present: (1) one party does not have ample liquid assets to pay for attorney's fees; or (2) the failure to award attorney's fees will undermine the court's other financial orders"). In the present case, the court found that awarding the plaintiff $10,000 in appellate attorney's fees was necessary to avoid undermining the judgment of contempt and its attendant orders regarding the defendant's obligation to pay the plaintiff $62,510, the outstanding balance of lump sum alimony owed to the plaintiff. On the basis of the record, we conclude that the foregoing finding justified the court's award of attorney's fees to the plaintiff.[8]

In sum, we conclude that the court did not abuse its

discretion in granting the plaintiff's motion for appellate attorney's fees.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In 2012, the plaintiff filed a postjudgment motion for contempt, asserting that the defendant had failed to comply with a portion of the June, 2011 order that is not at issue in this appeal. The trial court, *Westbrook, J.*, granted the motion for contempt, and this court affirmed the judgment of contempt on appeal. See *Giordano* v. *Giordano*, 153 Conn. App. 343, 344, 101 A.3d 327 (2014).

[2] The trial court submitted a signed transcript of its oral decision. See Practice Book § 64-1 (a).

[3] During the evidentiary hearing on the plaintiff's motion for contempt, both parties represented that the defendant's accounting, which was admitted into evidence, was not identical to the accounting that the defendant had mailed to the plaintiff as an attachment to the January 24, 2019 letter. The defendant's accounting contained an entry indicating that it had been revised on March 9, 2019.

[4] Moreover, the court expressly credited the plaintiff's accounting. It logically follows that the court discredited the defendant's accounting.

[5] General Statutes § 46b-62 provides in relevant part: "(a) In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

[6] General Statutes § 46b-82 provides in relevant part: "(a) At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment. . . ."

[7] On May 22, 2019, the plaintiff filed a motion for articulation of the court's decision granting her motion for appellate attorney's fees. On June 10, 2019, the court granted the motion and issued an articulation.

[8] In his objection to the plaintiff's motion for appellate attorney's fees, the defendant argued that paragraph 10 of the June, 2011 order, which provided in relevant part that "[e]ach party shall be responsible for his or her own past, present or future counsel fees," prohibited the court from awarding the attorney's fees requested by the plaintiff. The defendant also raised this argument during the evidentiary hearing on the motion. In its June 10, 2019 articulation, the court rejected this argument, concluding that paragraph 10 of the June, 2011 order did not preclude it from granting the plaintiff's motion.

As the plaintiff observes in her appellate brief, although the defendant preserved the issue concerning paragraph 10 of the June, 2011 order in the trial court, he did not raise this issue in his appellate brief. "[A]n appellant who fails to brief a claim abandons it." (Emphasis omitted; internal quotation marks omitted.) *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 306 Conn. 304, 319, 50 A.3d 841 (2012), cert. denied, 569 U.S. 918, 133 S. Ct. 1809, 185 L. Ed. 2d 812 (2013). We are mindful that the defendant is self-represented; however, "[t]he solicitous treatment we afford a self-represented party does not allow us to address a claim on his behalf when he has failed to brief that claim." *Traylor* v. *State*, 332 Conn. 789, 807, 213 A.3d 467 (2019). Thus, notwithstanding that the defendant raised the argument regarding paragraph 10 of the June, 2011 order before the trial court and during oral argument before this court, we decline to address the merits thereof as a result of his failure to brief it in his appellate brief.